IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 08-21377-CIV-KING

VIRGINIA TELESCA, MICHAEL TELESCA,
MARIA TELESCA, and WILLIAM CHIARELLO

Plaintiffs,

       v.

THE VILLAGE OF KINGS CREEK
CONDOMINIUM ASSOCIATION, INC. and
MIREYA VILLAVERDE

Defendant.

_____/

## AMENDED COMPLAINT

**COMES NOW,** the Plaintiffs, VIRGINIA TELESCA, MICHAEL TELESCA, MARIA TELESCA and WILLIAM CHIARELLO, by and through their undersigned counsel, and sue the Defendant, THE VILLAGE OF KINGS CREEK CONDMINIUM ASSOCIATION, INC., (hereafter collectively referred to as "KINGS CREEK") and MIREYA VILLAVERDE for their causes of action, state the following:

### JURISDICTIONAL ALLEGATIONS

1. The Court has original jurisdiction over the action pursuant to 42 U.S.C. § 3604 and 42 U.S.C. § 3617, because this lawsuit was brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the Southern District of Florida, Miami Division, under 28 U.S.C. §1391(b) because the claim arose in this judicial district.

3. Plaintiff VIRGINIA TELESCA, MICHAEL TELESCA, and MARIA TELESCA are residents of Massapequa Park, New York and own a condominium located at 7915 Camino Real, in Kendall, Florida, and are otherwise *sui juris*.

4. Plaintiff VIRGINIA TELESCA was at all times material, and continues to be a person with a disability, as defined by 42 U.S.C. § 3062, as she suffers from arthritis the effects of which has caused permanent impairments that substantially limit her ability to breathe, care for herself, concentrate, learn, lift, perform manual tasks, reach and walk. These conditions substantially effect the living activities of Mrs. TELESCA, including, but not limited to significantly impairing her mobility.

5. Plaintiff MICHAEL TELESCA was at all times material, and continues to be, a person with a disability as defined by 42 U.S.C. § 3062, as he suffers from a heart condition the effect of which has caused permanent impairments that substantially limit his ability to care for himself, concentrate, hear, lift, sit, and walk. These conditions substantially effect the living activities of Mr. TELESCA, including, but not limited to significantly impairing his mobility.

6. Plaintiff MARIA TELESCA was at all times material, and continues to be a person with a disability, as defined by 42 U.S.C § 3062, as she has Achondroplasia and Symptomatic Spinal Stenosis . This condition substantially effects her ability the living activities of Ms. TELESCA, including but not limited to significantly impairing her mobility.

7. Plaintiff WILLIAM CHIARELLO is an aggrieved person who has been injured by a discriminatory and retaliatory housing practice and has been associated with his relatives, the TELESCAS, who are qualified persons with disabilities as set forth herein.

8. Defendant, VILLAGE OF KINGS CREEK CONDOMINIUM ASSOCIATION, INC., (hereinafter KINGS CREEK) is a Florida Non-Profit corporation, licensed to and doing business in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

9. VIRGINIA, MICHAEL, and MARIA TELESCA presently reside in Massapequa Park, New York but own a two bedroom condominium in Kendall, Florida which they have used as their winter home since 1992.

10. In the 1990s, due to their declining health and physical impairments Plaintiffs VIRGINIA AND MICHAEL TELESCA were granted a reasonable accommodation by KINGS CREEK to convert their first floor balcony into a swing door, allowing their unit to be accessed from the rear because the back door is closer to the parking spaces, and was deemed reasonable in light of their disabilities.

11. Beginning in 2004, Maria Telesca has been requesting a designated parking space for her and her parents' use when they seasonally occupy the residence.

12. The Plaintiffs' request did not specify that the space needed be maintained during the time when the Plaintiffs were not in Miami. The request was for a space that the TELESCAS could use when they were visiting their unit.

13. However, it is DEFENDANTS policy that all parking spaces on the premises remain unassigned.

14. There are only limited handicapped parking space located near the Plaintiffs' building; this space is available to residents or guests on a first come, first serve basis to anyone with a handicapped placard.

15. Though a handicapped parking space is located near the Plaintiffs' building, the locality of the space has proved to be unaccommodating to their disabilities as it is located a considerable distance from the accessible rear door of their unit and requires that Plaintiffs walk a substantial distance to access their unit.

16. Plaintiffs VIRGINIA and MICHAEL TELESCA did not visit King's Creek in 2005 for health reasons.

17. In 2005, MARIA TELESCA arrived at the complex to visit her unit in 2005 and attempted to park in the designated handicapped parking spaces provided but all handicapped spaces were occupied.

18. MARIA TELESCA instead parked in a resident spot, but the Defendants immediately had her car towed.

19. The Plaintiffs VIRGINA TELESCA and MICHAEL TELESCA planned to return to Miami as soon as their health allowed.

20. Accordingly, in 2005, MARIA TELESCA asked her nephew, Plaintiff CHIARELLO, to move into the condominium to act as their caretaker when they were there, and to ensure its maintenance when they were not.

21. In November 2005, DEFENDANTS approved CHIARELLO's application for a parking permit and to occupy the unit when he moved into the unit. At that time, and at all times, Plaintiffs had two vehicles at King's Creek.

22. Plaintiffs added an addendum to their lease listing CHIARELLO as an additional tenant. There was no lease between CHIARELLO and the other Plaintiffs and the TELESCAS did not charge CHIARELLO rent during his time as caretaker of their condominium.

23. It was VIRGINIA, MICHAEL, and MARIA TELESCA'S intention to maintain their rights as residents while allowing CHIARELLO to maintain the physical care of their residence in their absence.

24. The approved application submitted to add CHIARELLO as an additional tenant clearly indicated that the TELESCAS were both the current owners and tenants of the unit.

25. On July 11, 2005, the Defendant KING'S CREEK denied Ms. Telesca's request for a designated parking space located near the entrance to their unit, stating, "the Association maintains handicap parking spaces for use by all occupants, guests and invitees. These spaces are the most centrally located spaces in the community with regard to easy access to the buildings within the condominium … The Association further believes that by providing said parking spaces that it has made reasonable accommodation for those requiring the use of said parking spaces by affording handicapped individuals an equal opportunity to use and enjoy their units. Furthermore, the Association does not designate any assigned parking spaces to any individuals for their exclusive use."

26. Because of such denial, Plaintiffs Maria Telesca, Virginia Telesca and Michael Telesca could not have equal enjoyment of their unit have been unable to return to KINGS CREEK until reasonable accommodation is provided for them because of their disability.

27. KINGS CREEK denied the TELESCAS' request based on a parking policy that has served to effectively deny Plaintiffs the enjoyment and use of the condominium, rendering the Plaintiffs unable to return to KINGS CREEK until reasonable accommodation is provided for them, because of their disability.

28. There exist a host of accommodations which could be made to ensure that Plaintiffs MARIA, MICHAEL and VIRGINIA TELESCA have a designated parking space located near the entrance to their unit, including but not limited to the installation of a removable "reserved" sign or even the simple placement of parking cones in the space in advance of the Plaintiffs' arrival.

29. Additionally MARIA TELESCA provided updated medical certification forms, dated March 14, 2007 and March 27, 2007, to KINGS CREEK stating that both VIRGINIA and

MICHAEL TELESCA had permanent impairments that limited their mobility and required an accommodation in parking.

30. On February 12, 2007, Plaintiffs Virginia Telesca, Maria Telesca and Michael Telesca requested an assigned parking space for their use, such request was denied by the Defendants. At that time, the Plaintiffs sent the Defendants notice that they were going to file a Fair Housing Act complaint.

31. Soon thereafter, on March 5, 2007, Defendants threatened Plaintiffs with eviction of Mr. Chiarello and towing of their vehicles.

32. On March 14, 2007, Plaintiffs filed a discrimination complaint against KINGS CREEK for failure to make reasonable accommodation for a designated parking spot.

33. On August 30, 2007, DEFENDANTS told MARIA TELESCA to withdraw the complaint against KINGS CREEK and counsel for KINGS CREEK would convince his client to allow CHIARELLO to remain in the unit and they would not tow his car, during this time, KINGS CREEK threatened to tow their car because they changed their policies refusing to allow any parking for seasonal tenants.

34. In January 2007 CHIARELLO exchanged vehicle. At that time he attempted to turn in his old decal and requested a new parking decal for the replacement car. His request was denied.

35. From January 2007 to August 2007 CHIARELLO resided in the unit for a 9 month period without a parking decal and was not towed once until September after the threats made by KINGS CREEK.

36. The Plaintiffs did not dismiss the complaint against KINGS CREEK and on September 10, 2007, DEFENDANTS retaliated against the Plaintiffs by towing CHIARELLO's

car under the pretext that he was not an approved tenant, even thought he was already approved in the past, as he lacked a proper lease.

37. Subsequently, CHIARELLO was frequently confronted and harassed by uniformed security officers who would advise him that he had to leave the property immediately or he would be arrested. CHIARELLO was consequently forced to hide from security, every day, and to try to evade them when entering and exiting his home on a daily basis.

38. In addition, after refusing to replace CHIARELLO'S parking sticker which allowed him to park in the resident spaces, CHIARELLO'S car was towed.

39. CHIARELLO was advised after the towing incident that he was no longer permitted to park anywhere on the property, nor in the adjacent lot which was also owned by King's Creek, and consequently had to park one half mile away every day for nearly a full year. He would drive VIRGINIA TELESCA'S car between King's Creek and his parking space one half mile away, every day at least once but usually twice or more.

40. CHIARELLO was forced to use disguises, which included illegally changing the license plates on his car at the risk of criminal prosecution, to avoid being towed when he needed to park on the property on days when VIRGINIA TELESCA'S car did not work, when in a hurry, or when weather made the cumbersome routine difficult.

41. In approximately April of 2008, the property manager saw CHIARELLO on the property. She had a uniformed security guard navigate her pursuit in a golf cart while she berated him over a megaphone. She radioed two other golf carts and they converged and pursued him in a pack. CHIARELLO advised that he was only there to to check on the TELESCA's premises, but when the pursuit and his fear intensified, he turned and ran. The carts split up to chase him and he jumped a fence and hid under a bush. He slid into his car and laid down on the front seat

until the carts passed. When they did, he quickly started his car and fled, now pursued by four golf carts (one containing the screaming megaphone-wielding manager), and one employee on foot.

42. CHIARELLO had no option other than to move after the terrifying incident in 2008, and moved into another apartment, incurring damages thereby.

43. Such actions by KINGS CREEK were done with deliberate indifference to the rights of persons with disabilities, and the rights of those associated with persons with disabilities.

44. As a result of this harassment, retaliation and discrimination, Plaintiffs have actual damages, psychological distress, mental anguish, grievous emotional distress, worry, frustration, and humiliation, loss of capacity for the enjoyment of life. These losses are either permanent or continuing in nature and Plaintiffs will suffer these losses in the future.

45. Since the Defendants' denial of reasonable accommodation and subsequent harassment and retaliation, Plaintiffs have been unable to return to their residence in KINGS CREEK as they are unable to effectively move in and out of their residence effecting the full enjoyment of their property.

46. Due to Defendants' retaliation, Plaintiffs lost the use of their second home, and suffered damages thereby.

47. Plaintiffs wanted to return to their residence for the winter season for 2006, 2007 and 2008, provided that the Defendant provide reasonable accommodation in parking and cease further discriminatory and retaliatory actions.

48. Plaintiffs intend to return to their second home once the accommodation is made, and they receive a parking spot at the property.

49. VIRGINIA TELESCA, MICHAEL TELESCA, MARIA TELESCA, and WILLIAM CHIARELLO retained the Law Offices of Matthew W. Dietz, P.L., and have agreed to pay a reasonable fee for the services rendered herein.

### COUNT 1 – VIOLATIONS OF 42 U.S.C. § 30604(f), § 760.23(8), Fla. Stat., and § 11A-12(1)(r) of the MIAMI-DADE COUNTY CODE OF ORDINANCES

50. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 50above as though set forth herein.

51. The foregoing conduct of Defendants constitutes discrimination in the provision of services or facilities in connection with such dwelling, because of a handicap.

52. Defendant's failure to modify its policies to accommodate the disabilities of the TELESCA Plaintiffs is discriminatory and unlawful.

53. Such actions by Defendant were in total and reckless disregard of Plaintiffs' rights and indifferent to the medical conditions or needs of Plaintiffs, and the rights of CHIARELLO as an aggrieved person.

54. As a result of this discrimination, Plaintiffs have actual damages, psychological distress, mental anguish, grievous emotional distress, worry, frustration, and humiliation, loss of capacity for the enjoyment of life.  These losses are either permanent or continuing and Plaintiffs will suffer these losses in the future.

**WHEREFORE,** Plaintiffs, VIRGINIA, MICHAEL AND MARIA TELESCA, and WILLIAM CHIARELLO demand judgment against Defendant, VILLAGE OF KINGS CREEK CONOMINIUM ASSOCIATION, INC., for compensatory and punitive damages, and attorneys fees and costs; and such other injunctive relief as this court deems fair and equitable, including, but not limited to, the modification of the vehicle policy, to ensure that discrimination in violation of the Fair Housing Acts do not occur in the future.

### COUNT II – VIOLATION OF 42 U.S.C. § 3617, § 760.37, Fla. Stat. and § 11A-12 of the MIAMI-DADE COUNTY CODE OF ORDINANCES

55. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 60 above as though fully set forth herein.

56. Defendant has engaged in malicious acts with the intent to coerce, intimidate, threaten, or interfere with the Plaintiffs due to the fact that they chose to exercise and enjoyment of their rights under the Fair Housing Amendments Act, the Florida Fair Housing Act and the Miami-Dade County Code.

57. These actions include, but are not limited to, denying the Plaintiffs and persons associated with the Plaintiffs there full enjoyment and use of the available parking accommodations at their home.

58. These actions include, but are not limited to, denying the Plaintiffs and persons associated with the Plaintiffs their full enjoyment and use of their unit and by denying access to Plaintiff CHIARELLO to maintain it.

59. These actions include, but are not limited to, towing the cars of Plaintiffs MARIA TELESCA and WILLIAM CHIARELLO in retaliation for the TELESCA'S reasonable request for a modification of the Defendant's policy regarding assigned spaces.

60. Defendants actions were in total and reckless disregard of Plaintiffs' rights and indifferent to the medical condition or needs of TELESCA Plaintiffs.

61. As a result of this harassment, retaliation and discrimination, Plaintiffs have actual damages, psychological distress, mental anguish, grievous emotional distress, worry, frustration, and humiliation, loss of capacity for the enjoyment of life. These losses are either permanent or continuing and Plaintiffs will suffer these losses in the future.

**WHEREFORE,** Plaintiffs, VIRGINIA, MICHAEL AND MARIA TELESCA, and CHIARELLO demand judgment against Defendant, VILLAGE OF KINGS CREEK CONDOMINIUM ASSOCIATION, INC., for compensatory and punitive damages, and attorneys fees and costs; and such other injunctive relief as this court deems fair and equitable to ensure that retaliation in violation of the Fair Housing Acts do not occur in the future.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 5, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of electronic filing to: **Anthony Garrett, Esq.,** Hyman Spector & Mars, LLP, 150 West Flagler Street, Suite 2701, Miami, Florida 33130.

> LAW OFFICES OF MATTHEW W. DIETZ, P.L**.**
> Attorneys for Plaintiffs
> 2990 Southwest 35th Avenue
> Miami, Florida 33133
> Tel: (305) 669-2822
> Fax: (305) 442-4181
> E-mail: MatthewDietz@USDisabilityLaw.com
>
> BY: s/ Matthew W. Dietz
>    Matthew W. Dietz, Esq.
>    Fla. Bar No.: 84905